**66** PEOPLE ex rel. U. AND D. R. R. CO. v. SMITH.

THIRD DEPARTMENT, JANUARY TERM, 1881.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE ULSTER AND DELAWARE RAILROAD COMPANY, Respondent, v. CHARLES SMITH and others, Assessors, etc., and JEREMIAH S. WHITNEY, Town Clerk, etc., Appellants.

*Review of assessment — 1880, chap. 269 — no notice of an application for the writ of certiorari is required — Writ need not be served ten days before the return day — Return as to both real and personal estate may be required — return is to be heard at Special Term — it may be contradicted — Reference may be ordered to take testimony.*

No notice of the granting of a writ of *certiorari* to review an assessment of real or personal property, under chapter 269 of 1880, need be given if the court in its discretion sees fit to dispense with it.

The supervisor of the town is not a necessary party to proceedings instituted under the said act to review an assessment.

The writ must require a return to be made thereto at a Special Term to be held within not less than ten days from the time of its allowance, but it is not necessary that the writ should be served ten days before the return day.

A writ issued upon the application of one assessed for real estate only, may require a return as to assessments of both real and personal property.

The hearing upon the return to a writ of *certiorari* issued under the said act should be at Special Term.

The return to a writ issued thereunder is not conclusive, but is open to contradiction, and the court may appoint a referee to take and report the evidence to be produced by the parties.

APPEALS from two orders made by the Special Term at Kingston, the one from an order appointing a referee to take testimony, and the other from an order denying a motion to set aside the order appointing the referee.

This is a special proceeding, being a *certiorari* under chapter 269, of the laws of 1880, entitled "An act to provide for the review and correction of illegal, erroneous or unequal assessments." It was instituted for the purpose of reviewing an alleged unequal assessment of the real estate of the relator.

The relator or petitioner applied *ex parte* for the writ to Justice WESTBROOK at chambers, and it was allowed, no notice having been given to the defendants.

The writ was allowed on the 11th day of September, 1880, was made returnable on September 25, 1880, at Special Term at

PEOPLE ex rel. U. AND D. R. R. CO. *v.* SMITH.    67

THIRD DEPARTMENT, JANUARY TERM, 1881.

Kingston, and was served on the assessors on the fifteenth of September.

Upon the filing of the return the relator's counsel moved the court for the appointment of a referee to take testimony to contradict them.

The defendants objected and insisted that the Special Term had no authority to appoint a referee or to entertain a hearing upon the return, but that the hearing must be had at the General Term; that a case was not presented for taking testimony; that the return was conclusive and could not be traversed or contradicted by testimony, but that the hearing must be on the return itself. The court overruled the objections and made an order appointing a referee, which was served and a notice of hearing before the referee was also served. The appellants then made a motion before the justice, on affidavits and on all the papers, to set aside the order of reference, which was denied *pro forma.*

*A. Schoonmaker,* for the appellants.

*P. Cantine & S. L. Stebbins,* for the relator.

LEARNED, P. J.:

This is a proceeding under chapter 269, Laws of 1880, entitled "An act to provide for the review and correction of illegal, erroneous or unequal assessments." The first section of that act authorizes the issue of a writ of *certiorari* on the petition of any person or corporation claiming to be aggrieved, to review an assessment of real or personal property, "when the petition shall set forth that the assessment is illegal, specifying the grounds of the alleged illegality, or is erroneous by reason of over-valuation, or is unequal in that the assessment has been made at a higher proportionate valuation than other real or personal property." It is apparent from the title of the act and from the act itself, especially from sections one and four, that it is intended to give relief against certain wrongs which have been long and well known to exist, but which have been heretofore practically remediless. (*People* v. *Dixon,* 15 Sup. Ct. N. Y., 178; *People* v. *Supervisors,* 60 N. Y., 381.) The case of *Youmans* v. *Simmons* (14 Sup. Ct. N. Y., 466) affords an instance. There the assessors, after assessing the value

of the land in their town, willfully inserted in the assessment roll all of the land at one-third of the value at which they had actually estimated it, excepting, however, the ground rents owned by the plaintiff, which were inserted at their full value. And in construing the present act we should have in mind the evils at which it was aimed, and should give it effect accordingly.

The first point made by the appellants is that the writ is irregular, in that it was granted without notice. The requiring of notice is discretionary. (Code Civil Procedure, §§ 2128, 3355.) The court below dispensed with it, and as the proceeding is merely a review without any stay of the action of the assessors, notice seems unnecessary.

Next, the appellants claim that the writ is defective in not making the supervisor a party. They insist that the assessment roll by law was to have been delivered to the supervisor, and that such law is not changed by section 9 of the act under consideration. It seems to us to be unnecessary to decide whether or not section 9 has changed the former law. The object of the statute is a review of the proceedings of the assessors. The statute does not contemplate a mere affirmance or reversal of the whole assessment as under a common-law *certiorari* (*People* v. *Ferris*, 36 N. Y., 218), but it provides for a correction, for a reassessment and the like, as if the appellate court were, to some extent, to exercise its own judgment upon the matter. No stay is to be granted, nor are the original papers to be returned. It is, therefore, of little consequence what officer has the actual custody of the assessment roll. That will remain with him. If the correction by the court is made in time for the use of the board of supervisors at its annual session it can be acted upon. (Sec. 5.) If not made in time, the wrong done the petitioner is to be redressed at the next. (Sec. 8.) Whether it be the supervisor or the town clerk who has the assessment roll is immaterial. For if a new assessment is ordered it is not to be made by the officer in possession of the roll. His duties are in no way disturbed by this proceeding; and as a mere custodian of the papers it was not absolutely necessary, even although it were suitable, to make him a party. The matters which are to be returned are within the knowledge of the assessors, and if they should be unable to make any return by reason of an inability to obtain the papers

PEOPLE ex rel. U. AND D. R. R. CO. v. SMITH.     69

THIRD DEPARTMENT, JANUARY TERM, 1881.

they could make that excuse. They complain of no such inability in this case.

Next, the appellants insist that the writ was not served ten days before the return day. The Code of Civil Procedure makes a *certiorari* returnable within twenty days after service at the clerk's office. (Sec. 2132.) But this statute is special, and it provides that the writ shall be returnable at a Special Term (sec. 2), and that the judge shall prescribe the time within which a return shall be made, which shall not be less than ten days. (Sec. 3.) This does not say, not less than ten days after service. It was to be made returnable at a Special Term of the court, and, therefore, was to be returnable at a fixed time. It could not therefore, in terms, be made returnable not less than ten days after service. The meaning of the statute is that the Special Term, at which the writ is returnable, must be not less than ten days from its issue. The court can extend the time for making a return if necessary. (Sec. 3.)

Next, the appellants insist that the writ is too broad, in that it calls for assessments on real and on personal property. We see no reason for this objection. Injustice may be done to a petitioner by improper assessments of personal property, although his own property is exclusively real. The same tax falls on all.

Next, the appellants insist that when the return has been made the Special Term has no further jurisdiction. The Code of Civil Procedure, section 2138, requires that the *certiorari* therein provided for shall be heard at General Term. But that is a *certiorari* heard on the returns and limited as to the points to be determined by section 2140. The present proceeding is evidently different. The authority given in section 4 to review what is erroneous and unequal and to take evidence, contemplates a very different power — a power of review and modification as above stated. For this reason we have already held, at this present term, that such a *certiorari* is to be heard at Special Term, that being the tribunal where evidence which is for the first time produced must be heard. Section 7 also confirms this view, stating that appeal may be taken " as from an order."

Finally, the appellants insist that the order of reference was unauthorized, because the return is conclusive. In so doing the appellants rest on the familiar doctrine that, upon an ordinary com-

**70** PEOPLE ex rel. U. AND D. R. R. CO. v. SMITH.

THIRD DEPARTMENT, JANUARY TERM, 1881.

mon-law *certiorari*, the return cannot be contradicted. Authorities are not needed on that point. But there is nothing, so far as we know, to prevent the legislature from using a writ of *certiorari* as the mode of review, where the return thereto is not to be conclusive; and, on the contrary, the appellate tribunal is to receive new evidence; and the only question is, what the legislature meant by this present act? And here we may repeat that the very title of the act declares that it is to provide for the correction of  *  *  * unequal assessments. The very first section provides for cases *erroneous* by reason of over-valuation or *unequal*, in that the assessment has been made at a higher proportionate value, etc. How are these to be corrected? Did the Legislature suppose that assessors, who had made and sworn to an assessment roll, would, on a return to a *certiorari*, state that they had over-valued a piece of property, or that they had valued it at a higher proportionate value than other real or personal property in the same roll? Such a supposition is absurd. And this carefully prepared act is utterly useless if it is intended only to permit repentant assessors to acknowledge, in the return to the writ, their violations of their oaths and their duty. The present case is an illustration. The petitioners say, that on the first making out of the roll their real estate was valued at $120,000; that they submitted evidence that this was higher than other real estate, and claimed a reduction to $45,000. The assessors reduced it to $90,000. The petitioners show that other taxable real estate is assessed at only twenty-five per cent of its value, and that no considerable part of the personal estate is assessed.

The return of the assessors states that the valuation of the petitioners' real estate bears a just and true relation to the assessed valuations placed on the residue of the real estate, and that they deny that such residue is assessed at twenty-five per cent of its value, and allege that it is, on the average and in the aggregate, assessed at its just and true and full value. Thus the return in this important part is but a re-iteration of the assessment roll. So that, if the return is to be conclusive, this proceeding is useless.

But, plainly, the Legislature intended to provide a mode of relief which should be effectual. And therefore the act declares that if, on the return, it should appear that the assessment is illegal, erroneous or unequal, the court should have power, etc. Section 4 then

PEOPLE ex rel. U. AND D. R. R. CO. v. SMITH.    71

THIRD DEPARTMENT, JANUARY TERM, 1881.

proceeds : " If upon the hearing it shall appear to the court that testimony is necessary for the proper disposition of the matter, the court may take evidence or may appoint a referee to take such evidence as the court may direct, and report the same to the court, and such testimony shall constitute a part of the proceedings upon which the determination of the court shall be made." It would be difficult to use language which should be plainer or less liable to be misunderstood. How could testimony be necessary, if the return is conclusive ? Not only may the court take testimony or appoint a referee for that purpose, but *expressly* such testimony shall constitute a part of the proceedings upon which the determination of the court shall be made. That is, the court is to determine upon testimony to be taken. Thus the rule that the return is conclusive is swept away in this proceeding ; and the court is to receive other testimony on which to determine whether the assessment is illegal, erroneous or unequal.

It may be that this liberal power of reviewing assessments may throw great burdens upon the court, or even that some evils may be developed in its exercise. But we think that the intention of the Legislature is unquestionable. And whatever the evils may be, they can hardly be greater than those which have arisen from the acts of assessors, regardless of the law and of their oaths, and free from all control and responsibility. When assessors shall learn that their acts are subject to public review, they may understand that their oaths are not a mere form.

The orders appealed from should be affirmed, with ten dollars costs and printing disbursements.

Bookes, J., concurred ; Boardman, J., concurred with doubt.

Orders affirmed, with ten dollars costs and printing disbursements.